IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

WALLACE GILBERT MITCHELL, )
                                     )
       **Plaintiff,**           )
                                       )
**v.**                                   )      **Case No. CIV-17-732-HE**
                                       )
**JIM GERLACH, et al.,**       )
                                       )
       **Defendants.**       )

## REPORT AND RECOMMENDATION

Plaintiff Wallace Gilbert-Mitchell ("Plaintiff"), a federal prisoner appearing *pro se*[1]

and *in forma pauperis*, filed this action under 42 U.S.C. § 1983, alleging a violation of his

Eighth Amendment rights.  (Doc. 1).[2]  United States District Judge Joe Heaton referred the

matter to United States Magistrate Judge Shon T. Erwin for initial proceedings consistent

with 28 U.S.C. § 636(b)(1)(B), (C).  (Doc. 4).  It was subsequently transferred to the

undersigned Magistrate Judge.  (Doc. 113).  Before the Court are Defendants' Motions for

Summary Judgment (Docs. 181, 182),[3] arguing that (1) Defendants did not violate

Plaintiff's constitutional rights, (2) Defendants are entitled to qualified immunity, and (3)

---

[1] The court construes Plaintiff's *pro se* filings liberally.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[2] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination.

[3] While each Defendant filed a separate brief, the majority of the arguments and supporting facts remain unchanged from brief to brief.  Thus, the undersigned may refer to Defendants' arguments, rather than individually addressing each Defendant's almost identical argument.

Plaintiff failed to exhaust his administrative remedies.  Plaintiff has responded (Docs. 188, 189), and Defendants have replied (Docs. 196, 197).

Collaterally, after Plaintiff filed his Responses, Defendants moved to strike four of the ten exhibits (Doc. 188, at Exs. 3, 6, 7, 10) that Plaintiff attached to his Response.  (Doc. 195).  Plaintiff then responded twice in opposition to Defendants' Motion to Strike (Docs. 208, 216), causing Defendants to file another Motion to Strike (Doc. 218) aimed at Plaintiff's second response – or sur-reply.  The Court **GRANTS** Defendants' Motion (Doc. 218) and **STRIKES** Plaintiff's filing (Doc. 216) as an unauthorized sur-reply.  However, having resolved the Motions for Summary Judgment in Plaintiff's favor without considering any of the disputed exhibits (Doc. 188, at Exs. 3, 6, 7, 10), the undersigned **DENIES** Defendants' Motion to Strike (Doc. 195) as moot.[4]

For the reasons set forth below, the undersigned recommends the Court **DENY** Defendants' Motions for Summary Judgment.

## I.    Background

In his Complaint, Plaintiff alleges that while he was incarcerated in the Grady County Law Enforcement Center ("GCLEC"), Defendant Nathan Owings, a detention officer, sexually assaulted him by forcibly performing oral sex on him, and Defendant Jim Gerlach, GCLEC warden, "failed to protect Plaintiff" or "take any corrective action" once notified of the assault.  (Doc. 1, at 7).  Plaintiff initially sued Defendants Gerlach and Owings in their official and individual capacities, seeking monetary damages, as well as

---

[4] This denial should not be construed as the undersigned's endorsement of the veracity or authenticity of these exhibits.

injunctive and declaratory relief for alleged violations of his Eighth Amendment rights: specifically, punishment without due process; cruel and unusual punishment; failure to protect; and a violation of the Prison Rape Elimination Act (PREA) (Doc. 1, at 4, 6-8).

On December 11, 2017, District Judge Joe Heaton dismissed all but the following claims: (1) an individual capacity Eighth Amendment claim against Defendant Owings for monetary damages based on the alleged sexual assault, and (2) an individual capacity Eighth Amendment claim against Defendant Gerlach for monetary damages based on the theory that he failed to protect Plaintiff from Owings after learning of the alleged sexual assault. (*See* Doc. 11).

## II.    Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Universal Underwriters Ins. Co. v. Winton*, 818 F. 3d 1103, 1105 (10th Cir. 2016). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way" and "[a]n issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)). If the movant carries the burden of demonstrating an absence of a dispute as to material fact, "the nonmovant must then go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence and that show a genuine issue for trial." *Martin v. City of Oklahoma City*, 180 F. Supp. 3d

978, 983 (W.D. Okla. 2016) (citing *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324;

*Adler*, 144 F.3d at 671).

The Court's inquiry must be whether the evidence, when viewed "through the prism

of the substantive evidentiary burden," *Anderson*, 477 U.S. at 254, "presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law." *Id*. at 251-52. Although the Court views all facts in the

light most favorable to the nonmoving party at the summary judgment stage, "there is no

issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to

return a verdict for that party." *Id*. at 249 (citations omitted).

"[I]n opposing a motion for summary judgment, the non-moving party 'cannot rest

on ignorance of facts, on speculation, or on suspicion.'" *Bird v. W. Valley City*, 832 F.3d

1188, 1199 (10th Cir. 2016) (quoting *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.

1988)). The nonmoving party "must present affirmative evidence in order to defeat a

properly supported motion for summary judgment. This is true even where the evidence is

likely to be within the possession of the defendant, as long as the plaintiff has had a full

opportunity to conduct discovery." *Anderson*, 477 U.S. at 257.

## III.   The Court Should Deny Defendants' Motions for Summary Judgment.

Defendants begin their briefs attacking the factual probability of the alleged sexual

assault, arguing that it never occurred. (Doc. 181, at 18-23; Doc. 182, at 17-22). And of

course, if the assault did not occur, then Defendants could not have violated Plaintiff's

constitutional rights. Defendants use this proposition of factual improbability as the

foundation for their qualified immunity argument as well. However, most – if not all – of

the material facts that Defendants use to cobble together this argument, as well as their argument that Plaintiff failed to exhaust his administrative remedies, Plaintiff genuinely disputes.  And while Defendants wish to attack Plaintiff's credibility and insinuate that the Court should ignore as evidence his "self-serving" declarations[5] (Doc. 197, at 2), weighing the evidence is not the role of the Court at this stage.  Thus, as set forth below, summary judgment is inappropriate here.

> ### A.   There Are Genuine Disputes of Material Facts Regarding Whether Constitutional Violations Occurred.
>
> #### 1.   There Are Genuine Disputes of Material Facts Regarding Defendant Owings's Alleged Sexual Assault of Plaintiff.

Defendant Owings begins his argument by claiming "that there are no material facts at issue under which Plaintiff would be entitled to any relief," and thus, he "is entitled to summary judgment."  (Doc. 182, at 19).  However, Defendant Owings follows this statement with almost exclusively disputed facts.  First and foremost, Defendant Owings "consistently denie[s] that he sexually assaulted Plaintiff."  (Doc. 182, at 19; *see id*. at 11, 13; Doc. 24, at Exs. 4, 5).  However, Plaintiff's sworn declaration says the opposite.  (Doc. 188, at Ex. 1, at 3) ("On or about March 10, 2016 Owings escorted me alone to a secluded area in the GCLEC, and forcibly performed oral sex on me.").  Thereafter, Defendant

---

[5] The undersigned has treated the factual allegations of Plaintiff's declarations (*see, e.g.,* Doc. 188, at Ex. 1), as proper affidavit or declaration evidence as they are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated," Fed. R. Civ. P. 56(c)(4), and they are declared under penalty of perjury, 28 U.S.C. § 1746.  *See Dopp v. Honaker*, 2019 WL 4757810, at *2 (W.D. Okla. Sept. 30, 2019).

Owings continues to offer up additional disputed facts, often immaterial ones, to call the ultimate disputed fact – the sexual assault – into question.

Defendant Owings attacks Plaintiff's recollection of the date of the assault when compared with the date of the surrounding events Plaintiff describes preceding the assault. (Doc. 182, at 19).  Defendant Owings points out that "Plaintiff initially complained that Owings sexually assaulted him on or around March 10, 2016 – *i.e.* the day after Owings (and two other detention officers) placed Plaintiff on lockdown.  Yet during his deposition, Plaintiff subsequently testified that the purported assault occurred when he was being moved from Cell 337 to Cell 2F-05, *i.e.* on March 9, 2016."  (*Id.*; *id.* at 10-11 (*comparing* Doc. 24, at Exs. 4, 5, 6 *with* Doc. 182, at Ex. 6, at 13-16)).  The undersigned finds this argument unpersuasive and immaterial.  Plaintiff's caveat of "on or around" and consistent description of the events leading up to this alleged assault clearly encompass the day before or the day after March 10, 2016.  Regardless, the parties' continued quibbling over the exact date amounts to a factual dispute.

Defendant Owings then proffers that he had little contact with inmates given his position as "Classification Sergeant," and further that he "was not alone when he escorted Plaintiff . . . ; instead, two other detention officers also escorted Plaintiff."  (Doc. 182, at 20; *id.* at 10; *see* Doc. 24, at 9-10).  But again, Plaintiff specifically disputes these facts, claiming that he "routinely saw Defendant Owings in [his] cell housing area," "Defendant Owings escorted [him] alone to a secluded area," and that "he has never been escorted by Owings in the company of others."  (Doc. 188, at Ex. 1, at 2-3).

Defendant Owings then pivots to probabilities, positing that "[c]onsidering the height and weight differences [between Defendant Owings and Plaintiff], as well as Owings' shoulder injury, it is difficult to believe that he was physically capable of 'forcibly performing oral sex' on Plaintiff."  (Doc. 182, at 20; *see id.* at 10; Doc. 24, at Exs. 5, 11, 12 (describing Plaintiff and Defendant's physical characteristics, as well as noting Defendant Owings's recommended limitation to not reach above his chest or overhead)). While Plaintiff does not dispute the physical characteristics of himself or Defendant Owings, he does highlight the fact that Defendant Owings was in a position of authority over him and allegedly armed with a taser at the time of the assault.  (Doc. 188, at 9-10; *id.* at Ex. 1, at 2).  While undisputed, Defendant Gerlach's facts certainly do not warrant summary judgment: the undersigned is unpersuaded by Defendant Owings's insistence that the sexual assault alleged by Plaintiff is impossible when the individuals are differently abled or disproportionally sized.

Defendant Owings then moves on to the investigation of the assault, which was alleged to have begun March 11, 2016 – but was not fully investigated until August of 2016.[6]  (Doc. 182, at 20-21; *see id*. at 13-14; *see also* Doc. 24, at Ex. 4).  However, this delayed investigative report does not disprove Plaintiff's allegation, but rather fails to substantiate it. (Doc. 24, at Ex. 4, at 7 (declining to pursue the case for investigation and/or prosecution)).  And again, Plaintiff disputes the findings of this investigation – an

---

[6] The undersigned notes that Defendants only offer up declarations to support the assertion that this investigation took place swiftly.  In fact, the investigation provided to this Court did not take place until almost five months later – after Plaintiff filed an Administrative Tort Claim.  (Doc. 24, at Ex. 4, at 2).

investigation, notably, that did not include Plaintiff, the victim.  (Doc. 188, at 4-5; Doc. 39, at Ex. 1, at 3).

Finally, Defendant Owings accuses Plaintiff of failing to report the alleged injuries to his penis.  (Doc. 182, at 20-21).  Plaintiff, however, declares under penalty of perjury that he sought – and was denied – medical care for the injuries to his penis sustained during the assault.  (Doc. 188, at Ex. 1, at 4).  In closing, Defendant mentions Plaintiff's lengthy list of prior PREA complaints.  (Doc. 182, at 21).  While undisputed, this immaterial fact only serves to attack Plaintiff's credibility.

Each of these arguments attack Plaintiff's version of the facts in an effort to show that the alleged sexual assault did not occur and therefore, there was no violation of Plaintiff's constitutional rights.  However, the facts proffered by Defendant Owings are almost entirely disputed.  Because genuine disputes of material fact exist with respect to Plaintiff's Eighth Amendment claims against Defendant Owings, summary judgment must be denied.

### 2. There Are Genuine Disputes of Material Facts Regarding Defendant Gerlach's Alleged Failure to Protect Plaintiff from Owings.

Defendant Gerlach begins by asserting that he "cannot be held liable in his individual capacity for failing to protect Plaintiff from any purported future unlawful contact" because "there was no underlying violation of Plaintiff's constitutional rights." (Doc. 181, at 21).  In support of this assertion, Defendant Gerlach refers to and incorporates Defendant Owings's Motion for Summary Judgment (Doc. 182), where – as detailed above, *see supra* III.A.1 – Defendant Owings "consistently denie[s] that he sexually

assaulted Plaintiff." (Doc. 182, at 19; *see id.* at 11, 13; Doc. 24, at Exs. 4, 5, 9).   As

explained above, Plaintiff disputes this.   Defendant Gerlach then offers that "Plaintiff's

allegations lack merit for several reasons," and makes the following assertions in an effort

to disprove Plaintiff's version of events. (*See* Doc. 181, at 18-23).

First, Defendant Gerlach claims that "corrective action was indisputably taken the

very same day that Forsythe received Plaintiff's March 11, 2016 request for service

regarding the alleged assault" (Doc. 196, at 4) because "Plaintiff was separated from

Defendant Owings from March 11, 2016 until his release from GCLEC on March 14, 2016,

since Owings did not work from March 11, 2016 until May 9, 2016."  (Doc. 181, at 21; *id.*

at 12; *id.* at Ex. 5, at 2; Doc. 24, at Exs. 2, 5, 11, 12).  In support of this assertion, Defendant

Gerlach relies on (1) his own sworn declaration (Doc. 24, at Ex. 2, at 2) ("Sergeant Nathan

Owings injured his right shoulder on-the-job in August of 2015.   Due to this injury, on

March 11, 2016 until May 9, 2016 Sergeant Owings was not present at or work at

GCLEC."); (2) Defendant Owings's timesheet for March 6, 2016, to March 20, 2016 (*id.*

at Ex. 10);[7] (3) Defendant Owings's worker's compensation report (*id.* at Exs. 11-12);[8] and

(4) Defendant Owings's sworn declaration that "[o]n March 11, 2016, [he] had right

---

[7] The undersigned notes that while the timesheet provides lines for both the employee and
supervisor to sign "certify[ing] that the hours and minutes shown herein are a complete and
accurate report of actual time worked and/or leave taken each day for the reporting period,"
neither line is signed.  (Doc. 24, at Ex. 10).

[8] While these documents provide evidence of Defendant Owings's injury and
recommended limitations, they fail to support Defendants' assertion that Defendant
Owings had surgery on March 11, 2016, nor do they confirm that Defendant Owings was
absent from work beginning March 11, 2016.

shoulder surgery and did not work from March 11, 2016 until May 9, 2016" (*id.* at Ex. 5, at 2). Plaintiff, however, disputes this – claiming "that he saw Defendant Owings on a least two more occasions after the sexual assault." (Doc. 188, at 4). Specifically, Plaintiff alleges that after Defendant Owings placed him in a cell alone to "give [Plaintiff] some time to think about [reporting Defendant Owings] until [he could] come back and see [Plaintiff] again," Defendant Owings promised Plaintiff that he "was going to come get [him] again the next day" for a "repeat performance." (Doc. 188, at Ex. 2, at 10-11). And, in fact, Plaintiff claims that on March 11, 2016, Defendant Owings told him "he was leaving work early because he has a shoulder injury claim, and only came in to check on [Plaintiff] and drop some paperwork off." (Doc. 39, at Ex. 1, at 3).

Next, Defendant Gerlach declares that it is "undisputed that Plaintiff did not verbally inform Gerlach of or directly submit to Gerlach any request to staff or grievance complaining that Owings assaulted him." (Doc. 181, at 21). Defendant Gerlach relies on his own sworn affidavit stating that "Plaintiff's request to staff, complaining of the alleged assault against him by Defendant Owings, was not submitted to [him]." (Doc. 24, at Ex. 2, at 1). Plaintiff also specifically disputes this – claiming that "on or about March 10, 2016, [he] handed a second request/complaint to Defendant Gerlach" and had a conversation with him (Doc. 188, at Ex. 1, at 4; *id.* at Ex. 2, at 14), "complain[ing] of the sexual assault on [or about] March 9, 2016" (Doc. 39, at Ex. 1, at 3). Plaintiff maintains that "he verbally communicated to Gerlach that [he] had been sexually assaulted after the assault occurred and again asked that Owings be kept away from [him]." (Doc. 188, at Ex. 1, at 4). These sworn declarations of Plaintiff's squarely contradict Defendant Gerlach's

assertion that "there is simply no evidence to support Plaintiff's claim that Gerlach was notified of Owings's alleged sexual assault of Plaintiff." (*See* Doc. 196, at 4).

Next, Defendant Gerlach alleges that "corrective action was taken after Forsythe reviewed Plaintiff's March 11, 2016 Federal ROS." (Doc. 181, at 21). Specifically, Defendant Gerlach claims that "Forsythe initiated investigations into Plaintiff's sexual assault claim the very day he received Plaintiff's March 11, 2016 Federal ROS, when he forwarded the complaint to GCLEC's (then) investigator, Lieutenant Cliff Walker,[9] and contacted then-DMI Albright." (*Id.*; Doc. 24, at 8). However, admittedly no attempts were made to "follow-up with Plaintiff" until March 14, 2016 – after "Plaintiff had already been released" – and Defendant Owings was not interviewed until his return to duty, several weeks later. (Doc. 181, at 21-22). While Plaintiff lacks the personal knowledge to directly dispute the immediacy of GCLEC's actions, Defendant Gerlach's own evidence does not conclusively support his narrative of swift action in investigating Plaintiff's complaint against Defendant Owings.[10]   Furthermore, Plaintiff confirms that he was never interviewed in relation to his complaint against Defendant Owings (Doc. 188, at 5; Doc. 39, at Ex. 1, at 3), which is a material attack on the legitimacy of this investigation.

Finally, Defendants assert that "it is undisputed that Plaintiff was not assaulted or otherwise harmed because of Defendant Gerlach's alleged failure to protect him." (Doc.

---

[9] The undersigned notes that Defendants rely almost exclusively on Forsythe's declaration (Doc. 24, at Ex. 9) and report, dated June 4, 2018 (*id.* at Ex. 4, at 11) to support this assertion. (Doc. 181, at 21). No declaration from Investigator Cliff Walker to verify this information has been submitted to this Court.

[10] *Supra* note 6.

181, at 22).  However, this Court has already discredited the materiality of this fact, finding that "[w]hile the absence of any further assault after the warden acquired knowledge may limit or preclude recovery of meaningful compensatory damages, it does not preclude the establishment of a constitutional violation and the recovery of nominal damages."  (Doc. 48, at 3) (quoting *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001)).

Each of these arguments attack Plaintiff's version of the facts in an effort to show that Defendant Gerlach did not fail to protect Plaintiff from Defendant Owings and, therefore, there was no underlying violation of Plaintiff's constitutional rights.  However, the facts proffered by Defendant Gerlach are almost entirely disputed.  Because genuine issues of material fact exist with respect to the Eighth Amendment claim against Defendant Gerlach, summary judgment is inappropriate.

**B.     Defendants are Not Entitled to Summary Judgment on Qualified Immunity.**

Defendants assert they are entitled to qualified immunity as to Plaintiff's Eighth Amendment claims against them because, factually speaking, "Plaintiff has failed to show that Defendant[s] violated his constitutional rights."  (Doc. 181, at 25; Doc. 182, at 24). And while Defendants also maintain that "Plaintiff cannot show that Defendant[s] violated his clearly established, federal constitutional rights, nor is there any published decision of the United States Supreme Court or the Tenth Circuit Court of Appeals which would have placed Defendant[s] on notice that [their] acts or omissions were in violation of constitutional rights" (Doc. 181, at 25), Defendants fail to seriously challenge Plaintiff's argument that sexual assault by a prison official or failure to protect an inmate from sexual

12

assault by a prison official violates an inmate's Eighth Amendment protection from excessive force or cruel and unusual punishment.  In fact, case law is quite settled on both matters – as this Court has explained before.  (*See* Doc. 7, at 10-15; Doc. 44, at 4-7).

### 1.    Standard for Qualified Immunity

The purpose of qualified immunity is "to insulate public officials 'from undue interference with their duties and from potentially disabling threats of liability.'" *Swanson v. Town of Mountain View, Colo.*, 577 F.3d 1196, 1199 (10th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)).  Qualified immunity is intended to "protect 'government officials performing discretionary functions' and shield[ ] them from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Id.* (quoting *Harlow*, 457 U.S. at 818).  "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).

"When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).  Although the evidence is viewed in the light most favorable to the nonmoving party, the "record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the [defendant is] entitled to qualified immunity." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).  Summary judgment based on qualified

immunity is appropriate if the law did not put the "officer on notice that his conduct would be clearly unlawful." *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007).

### 2.   Existence of a Violation

Both Defendants assert qualified immunity, arguing that "Plaintiff failed to show that [Defendants] violated his constitutional rights," and thus "for this reason alone," Defendants are "entitled to qualified immunity and Plaintiff's §1983 claims against [them] should be dismissed." (Doc. 181, at 25; Doc. 182, at 24). Defendants, however, confuse summary judgment and dismissal. Their claims that Plaintiff's constitutional rights have not been violated (the basis of the qualified immunity argument) rest on their proffered evidence that the alleged assault on Plaintiff did not occur and that Defendant Gerlach did not fail to protect Plaintiff. And as described above, genuine disputes of material fact exist with respect to these Eighth Amendment claims against both Defendants. *See supra* III.A. Therefore, granting summary judgment on qualified immunity based on a factual "lack of constitutional violation" would be improper.

### 3.   Clearly Established Constitutional Rights

To overcome the defense of qualified immunity, Plaintiff must show that Defendants' actions violated "clearly established" constitutional rights. "The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains." *Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017). "The precedent is considered on point if it involves materially similar conduct or applies with obvious clarity to the conduct at issue." *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017)

14

(internal quotation and emphasis omitted).  Courts must take care not to define clearly established law "at a high level of generality" and should instead determine "whether the violative nature of *particular* conduct is clearly established."  *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotations and citation omitted).

Although the Supreme Court has emphasized that specificity is important when defining clearly established law for excessive force claims,[11] *see id.*, the Tenth Circuit has acknowledged that "there will almost never be a previously published opinion involving exactly the same circumstances" in an excessive force case given the "all-things-considered inquiry" that must be undertaken in each case.  *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007).

Ultimately, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *modified on other grounds by Pearson v. Callahan*, 555 U.S. 223, 240-43 (2009).  "The key to the analysis is notice – an official somehow must be on notice that the conduct in question could violate the plaintiff's constitutional rights."  *DeSpain v. Uphoff*, 264 F.3d 965, 979 (10th Cir. 2001).  A case "directly on point" is not necessary, "but existing precedent must have placed the statutory or constitutional question beyond debate."  *Mullenix*, 577 U.S. at 12 (internal quotation and citation omitted).  In this regard, qualified

---

[11] *See Brown v. Flowers*, 974 F.3d 1178, 1182 (10th Cir. 2020) (treating jailers' sexual abuse of inmates as a type of excessive force).

immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.*

### a.      Defendant Owings's Alleged Sexual Assault of Plaintiff

The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including "adequate food, clothing, shelter, and medical care," and to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). "Prison conditions may be 'restrictive and even harsh,' but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objectiv[e], any more than it squares with evolving standards of decency." *Id.* at 833–34 (internal citations and quotation marks omitted). "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Id*. at 834 (internal citations and quotation marks omitted).

"The test for constitutional liability" under the Eighth Amendment "involves both an objective and a subjective component." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (internal quotation marks omitted). Regarding the objective component, the "prisoner must first [show] . . . that the deprivation at issue was in fact 'sufficiently serious.'" *Id.* (quoting *Farmer*, 511 U.S. at 834). The subjective component requires a plaintiff to show "the prison official's culpable state of mind," and this element may be satisfied with allegations the official "[knew] of and disregard[ed] an excessive risk to inmate health or safety." *Id*. So, "the official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and . . . must also draw the inference." *Id*. (quotation omitted).

Defendants' own Prison Rape Elimination Act policy notifies staff that "[s]exual abuse/assault of detainees by staff . . . is an inappropriate use of power and is prohibited by DOJ policy and the law." (Doc. 188, at Ex. 9). Furthermore, Tenth Circuit precedent places the question of whether Defendant Owings's alleged conduct violated Plaintiff's clearly established rights "beyond debate." *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). As this Court has previously stated:

> Mr. Gilbert-Mitchell has alleged that Defendant Owings sexually assaulted Plaintiff while he was an inmate in the GCLEC. (ECF No. 1:7). Sexual assault satisfies the "objective component" required to state an Eighth Amendment claim. *See Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) ("There is no question that sexual assault of the kind suffered by Ms. Tafoya meets this objective component of an Eighth Amendment claim."); *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993) ("[A]n inmate has a constitutional right to be secure in her bodily integrity and free from attack by prison guards."). And Plaintiff's allegations that Defendant Owings "forcibly" committed the assault are sufficient to satisfy the Eighth Amendment's "subjective component."

(Doc. 7, at 10-11; *see* Doc. 11, adopting Report and Recommendation).

Therefore, Defendant Owings is not entitled to summary judgment on qualified immunity.

### b.     Defendant Gerlach's Alleged Failure to Protect Plaintiff

Plaintiff argues that Defendant Gerlach is not entitled to qualified immunity because Plaintiff had the right "to be free of being sexually assaulted by Owings" and because it is "clearly established that a prison official's deliberate indifference to sexual abuse by prison employees violates the Eighth Amendment." (Doc. 188, at 14-15). In support, Plaintiff

cites the Prison Rape Elimination Act (*id.* at Ex. 9),[12] in addition to cases previously cited by this Court (*see* Doc. 7, at 10-15; Doc. 44, at 4-7).  (Doc. 188, at 14-15).  Defendant Gerlach counters by claiming that the protection Plaintiff describes is too general to meet the "clearly established" standard.  (Doc. 196, at 5-6).  The undersigned disagrees.

The Eighth Amendment protects prisoners against cruel and unusual punishment, which includes a duty on prison officials to protect prisoners in custody from violence. *Farmer v. Brennan*, 511 U.S. 825 (1994).  "To establish a cognizable Eighth Amendment claim for failure to protect an inmate from harm . . . , the plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm, the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component."  *Smith v. Cummings*, 445 F.3d 1254, 1258 (10th Cir. 2006) (quotation and brackets omitted).  Under the subjective component, the official must "actually be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837. Additionally, in order to successfully assert a § 1983 claim for failure to protect, a plaintiff must show a defendant's personal involvement or participation in the incident.  *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996).  Supervisor status alone is insufficient to support liability.  *Id.*  A supervisor is not liable under § 1983 for the actions of a subordinate unless an "affirmative link" exists between the constitutional deprivation and either the

---

[12] "While you are detained, no one has the right to pressure you to engage in sexual acts or engage in unwanted sexual behavior regardless of your age, size, race, [ ] ethnicity[, or] sexual orientation[. Y]ou have the right to be safe from unwanted sexual advances and acts."  (Doc. 188, at Ex. 9, at 1).

supervisor's personal participation or his failure to supervise. *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008); *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).

Again, Tenth Circuit precedent places the question of whether Defendant Gerlach's alleged conduct violated Plaintiff's clearly established rights "beyond debate." *See Ashcroft*, 563 U.S. at 741. "[I]t is clearly established that a prison official's deliberate indifference to sexual abuse by prison employees violates the Eighth Amendment." *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013). Moreover, this Court has already provided relevant case law clearly establishing the specific violation alleged by Plaintiff – "'failure to protect' – i.e. – take proper corrective measures after the assault occurred" – based on *Tafoya v. Salazar*, 516 F.3d 912, 917-23 (10th Cir. 2008) (reversing the district court's grant of summary judgment to the defendant-sheriff because a factual dispute existed as to his failure to enforce policies implemented to reduce the opportunity for sexual assault to occur in the future). (Doc. 7, at 14-15; Doc. 11, adopting Report and Recommendation).

Likewise, here, Plaintiff alleged that after the sexual assault occurred, he notified Defendant Gerlach himself, who thereafter failed to separate Plaintiff from Defendant Owings. The parties dispute whether Defendant Owings assaulted Plaintiff, whether Defendant Gerlach was notified of the assault, and whether Defendant Gerlach took the appropriate measure to protect Plaintiff following the assault. *See supra* III.A. However, if true, Plaintiff's allegations could lead a rational trier of fact to infer that Gerlach exhibited

deliberate indifference to a potential future sexual assault on Plaintiff. Therefore, Defendant Gerlach is not entitled to summary judgment on qualified immunity.

### C. Defendants Are Not Entitled to Summary Judgment Based on Non-Exhaustion of Administrative Remedies.

Finally, Defendants assert that even if the Court denies summary judgment on the foregoing grounds, "Plaintiff still cannot recover against [them] pursuant to the Prison Litigation Reform Act ("PLRA") as Plaintiff, a prisoner, failed to exhaust his administrative remedies." (Doc. 181, at 26; Doc. 182, at 24-25). Therefore, Defendants argue, they are entitled to summary judgment on Plaintiff's Eighth Amendment claims. The undersigned disagrees.

### 1. Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Because exhaustion of available remedies "is mandatory under the PLRA[,] . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). This means a prisoner must use "all steps that the agency holds out, and do[] so *properly* (so that the agency addresses the issues on the merits)." *Id.* at 90 (internal quotation marks omitted). "An inmate who begins the grievance process but does not

complete it is barred from pursuing a . . . claim under PLRA for failure to exhaust his administrative remedies." *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010) (internal quotation marks omitted).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When a defendant asserts an affirmative defense – such as a failure to exhaust administrative remedies – as a basis for summary judgment, he "must demonstrate that no disputed material fact exists regarding the affirmative defense asserted when the evidence is viewed in the light most favorable to the plaintiff." *Kramer v. Wasatch Cty. Sheriff's Office*, 743 F.3d 726, 746 (10th Cir. 2014) (internal quotation marks omitted).

"[A] defendant bears the burden of 'proving that the plaintiff did not [exhaust his] administrative remedies.'" *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (quoting *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011)). If the defendant satisfies this burden, the plaintiff incurs a duty to "demonstrate with specificity the existence of a disputed material fact," *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997), or to "show that remedies were unavailable to him as a result of" the actions of prison officials. *Tuckel*, 660 F.3d at 1254. In the absence of either showing, the defendant would be entitled to summary judgment on the affirmative defense. *See id*. "To be 'available,' a remedy must be 'capable of use for the accomplishment of a purpose.'" *Id.* at 1252 (citing *Booth v. Churner*, 532 U.S. 731, 737 (2001)). "[A]n administrative remedy is not 'available'

under the PLRA if "prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of [the] administrative remedy."  *Id*.

### 2.    GCLEC's Grievance Procedure

Defendants maintain that "at all relevant times an inmate grievance procedure [was] in place" at GCLEC and "set forth in the Inmate Handbook."  (Doc. 181, at 15-16, 27; Doc. 182, at 14, 26; *see* Doc. 24, at Ex. 8, at 9-10).  Specifically, Defendants point to the "Request to Staff" and the "Grievance, Informal Grievance, and Formal Grievance" sections of the Inmate Handbook.  (Doc. 24, at Ex. 8, at 9-10).  The policy provides that an inmate should first attempt to resolve any requests for assistance or complaints "by talking with a responsible authority or other appropriate staff member."  (*Id*. at 9).  The policy further provides that

1.    If the issue is not resolved by verbal communications or if the issue is of the nature that must be submitted in writing, the inmate shall submit a "Request to Staff" form.
2.    Only one issue shall be listed per form.
3.    Inmates will submit on a "Request to Staff" form their personal and facility concerns, complaints/issues and request for assistance.
4.    A designated employee will respond to an inmate requests [sic] for assistance.
5.    Request of Staff forms must be submitted within 48 hours of the incident and will be answered within 15 business days (excluding weekends and holidays) of receiving the form.

(*Id*.)  Only "after exhausting informal attempts to resolve issues," may an inmate use "the inmate grievance report form."  (*Id*.)  "The inmate grievance must be submitted within fifteen calendar days of the incident or when the inmate learned of the issue."  (*Id*. at 10). "Grievance forms are obtained from the Pod office."  (*Id*.)  "All grievance forms will be returned within 30 days of receiving it."  (*Id*.)  The policy does not provide for further

appeal of the grievance, nor does it provide a mechanism to appeal an unanswered Request to Staff or grievance.  (*Id.*)

Defendants emphasize that "[f]ederal detainees at the GCLEC are required to follow the grievance policy and procedure, just like any other inmate at the GCLEC."  (Doc. 181, at Ex. 5, at 3).  Defendants further declare that "[w]hen a federal detainee has an issue or concern at the GCLEC, they were required to fill out a Federal Detainee's Request for Services," which was then provided to Captain Eric Forsythe, "the liaison between the GCLEC and the federal agencies with which the Jail had contracts."  (*Id*. at 2; Doc. 24, at Ex. 9, at 1).

### 3.    The Availability of GCLEC's Grievance Procedure to Plaintiff is Disputed.

Defendants allege that they "found no evidence that [Plaintiff] ever submitted a formal grievance pursuant to the Inmate Handbook."  (Doc. 181, at 16, 28; Doc. 182, at 15, 27).  To support this assertion, Defendants offer affidavits from Defendant Gerlach and Forsythe denying ever receiving a grievance from Plaintiff.  (Doc. 24, at Ex. 9; Doc. 181, at Ex. 5, at 3).  In response, Plaintiff argues that GCLEC made the grievance procedure unavailable to federal detainees.  (Doc. 188, at 15-18; *see id.* at Ex. 1, at 1-2).

Plaintiff first claims that he never received the Inmate Handbook, where the grievance procedure is laid out, because "[a]ccording to Defendant Gerlach, he refused to issue us handbooks because all federal detainees are only housed in GCLEC temporarily, and it would be an 'unnecessary expense,' that is not paid for in the contract to house federal prisoners."  (Doc. 188, at Ex. 1, at 2).  Defendants suggest the Court ignore

Plaintiff's "self-serving" – but rather specific – sworn statement, and instead accept only Defendant "Gerlach's sworn statements regarding the Inmate Handbook and federal inmates' receipt of same." (Doc. 197, at 2); (*see* Doc. 181, at Ex. 5, at 3 ("All inmates receive the Inmate Handbook . . . upon entry to the GCLEC. [Plaintiff], like any other inmate, received an Inmate Handbook upon his entry to the GCLEC."). In the absence of other evidence – for instance a signed receipt for the Inmate Handbook – the conflicting sworn statements create a factual dispute on this issue, which goes to whether the GCLEC grievance procedure was truly made available to Plaintiff, or whether "prison officials prevent[ed], thwart[e]d, or hinder[ed] a prisoner's efforts to avail himself of [the] administrative remedy." *Tuckel*, 660 F.3d at 1252.

Next, Plaintiff disputes the availability of the grievance procedure for federal detainees, declaring under penalty of perjury that

> [he] was told that any and all request or complaints had to be either orally told to staff or put on a 'Federal Detainee's Request for Services' form, that the form was the only form a federal detainee would be permitted to use while at GCLEC, and that once complete they could be submitted to any staff member.

(Doc. 188, at Ex. 1, at 1-2). Plaintiff further declares that

> [o]n multiple occasions while at GCLEC, I requested grievance forms, and staff refused to issue them to me. On one occasion, I was given a grievance form by [a] fellow inmate . . . [and] filled out the form and submitted it regarding being sexually harassed by Defendant Owings. Defendant Owings then brought me a Federal Detainee Request Form and told me that my grievance would not be processed, that because I was a federal detainee any complaint I had had to be placed on the Federal Request Form for Services.

(*Id.*)

Viewing the facts in the light most favorable to Plaintiff, it appears that when Plaintiff, a federal detainee, attempted to use a grievance form "to follow the grievance policy and procedure, just like any other inmate at the GCLEC" (Doc. 181, at Ex. 5, at 3), he was either (a) refused a form by staff or (b) told that he had to use the Federal Detainee Request form instead and that it was the "only form" for federal detainees for "any complaint." Defendants confirm that federal detainees must, in fact, use a different form, which is handled by a specific person, Captain Forsythe. (*Id*. at 2). However, this distinction is not explained in the Inmate Handbook (which Plaintiff asserts he did not receive); and it is not explained whether the federal form functions as an informal "Request to Staff" or as a formal grievance or both. (*See* Doc. 24, at Ex. 8, at 8-9). Defendants concede that Plaintiff filed at least one Federal Request for Services on March 11, 2016, concerning the alleged sexual assault. (*See* Doc. 24, at 8; *id*. at Ex. 9, at 1). There is at the least a factual dispute about whether the ambiguity and omissions in the Inmate Handbook and in the complaint procedures as communicated to federal detainees "prevent[ed], thwart[e]d, or hinder[ed]" Plaintiff's efforts to exhaust remedies. *Tuckel*, 660 F.3d at 1252.

Significantly, while Defendants admit that Plaintiff filed a Federal Request for Services (Doc. 24, at Ex. 9, at 1), they also state that "[j]ail staff has searched diligently for this request but it was unable to be located." (Doc. 24, at 8, fn.1). The admitted inadequacy of GCLEC's document management system for the grievance process creates an additional fact issue regarding Plaintiff's alleged attempts to exhaust his remedies – especially when Defendants wish to rely upon "a thorough check of [Plaintiff's] jail file" which they claim

revealed "no evidence that Plaintiff ever submitted a formal grievance pursuant to the Inmate Handbook." (Doc. 181, at Ex. 5, at 3).

Finally, regardless of whether Plaintiff's Federal Request for Services is deemed to be an informal Request to Staff or a formal grievance under the GCLEC policy, Defendants provide no evidence that any person <u>answered</u> Plaintiff's Request. Indeed, Plaintiff declares that he "submitted several" such Requests and he "never received any response from Captain Eric Forsythe" (Doc. 188, at Ex. 1, at 1), the person whom Defendants admit was designated to handle Federal Requests for Services. (Doc. 181, at Ex. 5, at 2). GCLEC's policy clearly states that "[a] designated employee <u>will respond</u> to an inmate requests [sic] for assistance," and that Request to Staff forms "<u>will be answered</u> within 15 business days (excluding weekends and holidays) of receiving the form," and that "[a]ll grievance forms <u>will be returned</u> within 30 days of receiving it." (Doc. 24, at Ex. 8, at 9-10) (emphasis added). Notably, if it is Defendants' position that the Federal Request for Services functions as an informal Request to Staff, an answer was a necessary pre-requisite for Plaintiff being allowed to file a grievance. (*See* Doc. 24, at Ex. 8, at 9) (providing that only "after exhausting informal attempts to resolve issues," may an inmate use "the inmate grievance report form"). A prison official's "failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). Importantly,

GCLEC's policy does not provide inmates a mechanism for proceeding or appealing when prison officials make no response to a Request to Staff or grievance.[13]

Given the foregoing facts, a rational trier of fact could find that administrative remedies were rendered unavailable to Plaintiff because prison officials "prevent[ed], thwart[e]d, or hinder[ed]" Plaintiff's efforts to exercise or exhaust remedies. *Tuckel*, 660 F.3d at 1252. Thus, neither Defendant Gerlach nor Defendant Owings is entitled to summary judgment on grounds of non-exhaustion. *See Adams v. Palmer*, 2009 WL 395209, at *2 (W.D. Okla. Feb. 17, 2009) (noting that summary judgment was improper on Plaintiff's alleged failure to exhaust administrative remedies based on Plaintiff's sworn statement that he had done so).

## IV.   Recommended Ruling and Notice of Right to Object.

For the reasons discussed above, the undersigned recommends that the Court **DENY** Defendants' Motions for Summary Judgment (Docs. 181, 182).

---

[13] *See, e.g., Jernigan v. Stuchell*, 304 F.3d 1030, 1032-33 (10th Cir. 2002) (considering a claim of unavailability of remedies with reference to a policy that "provides that if an inmate does not receive a response from the warden within thirty days after submission of the grievance, the inmate may send the grievance with evidence of its prior submission to an administrative review authority"); *Smith v. Beck*, 165 F. App'x 681, 684 (10th Cir. 2006) (considering a claim of unavailability of remedies with reference to a policy that provides, "[i]f the Request to Staff does not resolve the incident, or if prison officials do not respond to it, then the prisoner begins the formal resolution process and must submit a grievance within fifteen days of the incident or the date of the response to the Request to Staff, 'whichever is later.' If the prison staff failed to respond to the Request to Staff thirty days after its submission, the prisoner may submit the grievance without having received a response"); *Leatherman v. CoreCivic, Inc.*, 2022 WL 1262553 (W.D. Okla. Apr. 28, 2022) (same).

**The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of Court on or before September 16, 2022,** under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  The undersigned further advises the parties that failure to file a timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge and terminates the referral unless and until the matter is re-referred.

ENTERED this 2nd day of September, 2022.


AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE